

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARK W. DOBRONSKI**,
an individual,

        Plaintiff,

v.

**KRAUSE AND KINSMAN LAW LLC**,
a Missouri limited liability company,

**ADAM WILLIAM KRAUSE**,
an individual,

**ROBERT LOUIS KINSMAN**,
an individual,

**PATRICIA LYNN CAMPBELL**
a/k/a **TRICIA CAMPBELL**
a/k/a **PATRICIA LYNN DUNAVANT**,
an individual,

**JOANNA BERNADETTE ORSCHELN**
a/k/a **JOANNA BERNADETTE MALONE**,
an individual,

all doing business as
**KRAUSE & KINSMAN LAW FIRM**,
an unregistered fictitious business name,

and all doing business as
**KRAUSE AND KINSMAN GROUP, LLP**,
an unregistered fictitious business name,

        Defendants.

Case No.

Case:2:23-cv-10541
Judge: Friedman, Bernard A.
MJ: Stafford, Elizabeth A.
Filed: 03-08-2023 At 08:20 AM
CMP Dobronski v. Krause and Kinsman
 Law LLC, et al (jo)



F I L E D

MAR 08 2023

CLERK'S OFFICE
DETROIT

## COMPLAINT

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendants alleges:

1. This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*, and the Florida Telemarketing Sales Law ("FTSL"), Fla. Stat. § 501.059, *et seq.*

### Parties

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, is a resident of Orange County, Florida, has a place of business and residence in Washtenaw County, Michigan, and has a place of business in the City of Westland, Wayne County, Michigan.

3. Upon information and belief, Defendant KRAUSE AND KINSMAN LAW LLC ("K&K") is a limited liability company organized and existing under the laws of the State of Missouri, with a principal office located at 4717 Grand Avenue, Suite 300, Kansas City, Missouri 64112-2206.

4. Upon information and belief, Defendant ADAM WILLIAM KRAUSE ("Krause") is an individual, of the age of majority, is mentally competent, is not in the

2

military service, and resides at 6600 West 67th Street, Overland Park, Kansas 66202-4159.

5. Upon information and belief, Defendant ROBERT LOUIS KINSMAN ("Kinsman") is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 5111 West 96th Street, Overland Park, Kansas 66207-3312.

6. Upon information and belief, Defendant PATRICIA LYNN CAMPBELL ("Campbell") is also known as TRICIA CAMPBELL, is also known as PATRICIA LYNN DUNAVANT, is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 7036 North London Avenue, Kansas City, Missouri 64151-4003.

7. Upon information and belief, Defendant JOANNA BERNADETTE ORSCHELN ("Orscheln") is also known as JOANNE BERNADETTE MALONE, is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 2805 West 71st Street, Shawnee Mission, Kansas 66208-3104.

8. Upon information and belief, KRAUSE & KINSMAN LAW FIRM ("Firm") is an unregistered fictitious name utilized by Defendants K&K, Krause, Kinsman, Orscheln and Campbell (collectively referred to herein as the "Partners") to transact business.

9. Upon information and belief, KRAUSE & KINSMAN GROUP, LLP ("Group") is an unregistered fictitious name utilized by Partners to transact business.

## Jurisdiction

10. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

11. This Court has limited personal jurisdiction over Defendants Krause, Kinsman, Orscheln, and Campbell, pursuant to M.C.L. § 600.705, as a result of the defendants transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

12. This Court has limited personal jurisdiction over Defendants K&K, Firm and Group, pursuant to M.C.L. § 600.725, as a result of the defendants transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

## Venue

13. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district.

## The Telemarketing Laws

14. In response to widespread public outrage over intrusive telemarketing calls

4

to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

15. According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

16. Congress explicitly found that robo-calling is an invasion of privacy.

17. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

18. According to YouMail, Inc., a company which tracks robocall activity and

5

publishes the YouMail Robocall Index, during calendar year 2021 alone, American consumers were bombarded with over 50.5 *billion* robocalls; an average of over 150 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

19. In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

20. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

21. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

22. Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

23. The TCPA implementing regulations, at 47 C.F.R. § 64.1200(a), promulgate in relevant part:

6

"(3) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call;

(i) Is made for emergency purposes;

(ii) Is not made for a commercial purpose;

(iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing;

(iv) Is made by or on behalf of a tax-exempt nonprofit organization; or

(v) Delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103...

(7) Abandon more than three percent of all telemarketing calls that are answered live by a person, as measured over a 30-day period for a single calling campaign. If a single calling campaign exceeds a 30-day period, the abandonment rate shall be calculated separately for each successive 30-day period or portion thereof that such calling campaign continues. A call is "abandoned" if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting.

(i) Whenever a live sales representative is not available to speak with the person answering the call, within two (2) seconds after the called person's completed greeting, the telemarketer or the seller must provide:

(A) A prerecorded identification and opt-out message that is limited to disclosing that the call was for "telemarketing purposes" and states the name of the business, entity, or

individual on whose behalf the call was placed, and a telephone number for such business, entity, or individual that permits the called person to make a do-not-call request during regular business hours for the duration of the telemarketing campaign; provided, that, such telephone number may not be a 900 number or any other number for which charges exceed local or long distance transmission charges, and

(B) An automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call, including brief explanatory instructions on how to use such mechanism. When the called person elects to opt-out using such mechanism, the mechanism must automatically record the called person's number to the seller's do-not-call list and immediately terminate the call...."

24.     The TCPA implementing regulations, at 47 C.F.R. 64.1200(d),

promulgate:

"(d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the

8

do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to

9

the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

(7) Tax-exempt nonprofit organizations are not required to comply with 64.1200(d)."

25. The TCPA implementing regulations at, 47 C.F.R. § 64.1601, additionally promulgate in relevant part:

"(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.

(1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information." [Emphasis added.]

10

26. The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

> "PRIVATE RIGHT OF ACTION. **A person or entity** may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –
>
> (A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or
>
> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

27. Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the FCC adopted regulations establishing a national "do not call" database and prohibiting any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database, which regulations are set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

> "No person or entity shall initiate any telephone solicitation to:...

"(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

28. Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), provides for a private right of action, as follows:

"Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

29. The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as follows:

> "(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to...
>
> (b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber...
>
> (5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees...
>
> (9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

30. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

> "... A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

31. The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

> "(1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made.

13

(2) The person answering the telephone number required under subsection (1) shall provide a residential telephone subscriber calling the telephone number with information describing the organization or other person on whose behalf the telephone solicitation was made to the residential telephone subscriber and describing the telephone solicitation.

(3) A telephone solicitor shall not intentionally block or otherwise interfere with the caller ID function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber."

32.  The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as follows:

"(1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:...

(f) Fail to comply with the requirements of section 1a or 1b.

(2) ... [A] person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

33.  The FTSL, at Fla. Stat. § 501.059, promulgates in relevant part as follows:

"... (2) Any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number shall identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation...

(8)(a) A person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.

(b) It shall be unlawful for any person who makes a telephonic sales call or causes a telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call. However, it is not a violation to substitute, for the name and telephone number used in or billed for making the call, the name of the seller on behalf of which a telephonic sales call is placed and the seller's customer service telephone number, which is answered during regular business hours. If a telephone number is made available through a caller identification service as a result of a telephonic sales call, the solicitor must ensure that telephone number is capable of receiving telephone calls and must connect the original call recipient, upon calling such number, to the telephone solicitor or to the seller on behalf of which a telephonic sales call was placed. For purposes of this section, the term "caller identification service" means a service that allows a telephone subscriber to have the telephone number and, where available, the name of the calling party transmitted contemporaneously with the telephone call and displayed

on a device in or connected to the subscriber's telephone...

(10)(a) A called party who is aggrieved by a violation of this section may bring an action to:

1. Enjoin such violation.

2. Recover actual damages or $500, whichever is greater.

(b) If the court finds that the defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a)...."

34.  Plaintiff's telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God.  Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

35. Plaintiff's residential telephone number are 407-***-**22, 734-***-**12 and 734-***-**24.

36.  Plaintiff's residential telephone number 407-***-**22 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so listed continuously

since at least August 24, 2022 and at all times subsequent thereto.

37. Plaintiff's residential telephone numbers 734-\*\*\*-\*\*12 and 734-\*\*\*-\*\*24 are listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so listed continuously since at least June 29, 2003 and at all times subsequent thereto.

38. By listing his residential telephone numbers on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential telephone numbers.

39. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

40. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at \*26 ¶ 73 (FCC July 10, 2015) [Emphasis added].

41. Plaintiff is a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered

17

the nuisance and invasion of privacy of same.  Thus, Plaintiff has standing to bring

this action for alleged violations of TCPA's robocall provisions.  See *Leyse v. Bank*

*of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

42.  At no time relevant hereto has Plaintiff or any other authorized person

requested, consented, permitted, or authorized any contact from the Defendants.

43.  At no time has Plaintiff provided permission to the Defendants to engage

in telephone solicitation with the Plaintiff via telephone.

44.  At no time has Plaintiff provided "prior express written consent" (as that

term is defined under the TCPA and as interpreted by the FCC) for any of the

Defendants to initiate any telephone call to Plaintiff's residential telephone line using

an artificial or prerecorded voice to deliver a message.

45.  At no time has Plaintiff had an "established business relationship" (as that

term is defined under the TCPA and as interpreted by the FCC) with any of the

Defendants.

46.  The FCC has declared that purporting to receive consent during a call does

not constitute the *prior* consent necessary to deliver the message in the first place, as

the request is part of the telemarketing. See *In re Rules and Regulations Implementing*

*the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (June 26,

2003).

47. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

48. Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

49. Firm operates an Internet web site at www.krauseandkinsman.com ("Website") which Website expressly identifies the Firm by the name "Krause and Kinsman Lawfirm" and lists Krause as a co-founder, Kinsman as a co-founder, Orscheln as a partner, and Campbell as a partner.

50. Missouri law, specifically Mo. Rev. Stat. § 417.200, promulgates:

> "That every name under which any person shall do or transact any business in this state, other than the true name of such person, is hereby declared to be a fictitious name, and it shall be unlawful for any person to engage in or

transact any business in this state under a fictitious name
without first registering same with the secretary of state as
herein required."

51. Missouri law, specifically Mo. Rev. Stat. § 417.230, promulgates:

"Any person who shall engage in or transact any business
in this state under a fictitious name, as in sections 417.200
to 417.230 defined, without registering such name as
herein required, shall be deemed guilty of a misdemeanor."

52. The common-law rule is that members of a partnership are jointly and
severally liable for the tortious act of one of the partners or an agent or servant of the
partnership if committed in the course of his or her employment.

53. For each and every call alleged herein initiated to Plaintiff's telephone line,
Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right
of seclusion.

54. For each and every call alleged herein initiated to Plaintiff's telephone line,
Plaintiff suffered the injury of the occupation of the telephone line by unwelcome
calls, making the phone unavailable for legitimate callers or outgoing calls, including
emergency calls, when the telephone line was seized by Defendants' calls.

55. For each and every call alleged herein initiated to Plaintiff's telephone line,
Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff.
For calls that were answered, Plaintiff had to go to the unnecessary trouble of
answering them. Even for unanswered calls, Plaintiff had to deal with missed call

notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

56. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

57. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

## Allegations Specific to this Complaint

58. Defendants are engaged in soliciting members of the public to be represented by Defendants in filing claims and lawsuits and other matters arising out of and suffered by individuals related to Camp Lejeune or other military toxic exposure.

59. Telemarketing is integral to Defendants' business scheme.

60. Defendants hires third-party call centers to initiate telephone calls *en masse* to consumers using automatic telephone dialing systems and pre-recorded

voice messages to solicit prospective clients for Defendants' mass tort litigation services.

61. These automatic telephone dialing systems can store lists of telephone numbers (and, often, personal information) of consumers and use a random number or sequential number generator which has the capacity to select and initiate calls to persons from the stored lists of telephone numbers with no human involvement and only route the call to a telemarketing agent when a called person has actually answered the call.

62. The automatic telephone dialing system increases the efficiency of the third-party call center because the telephone solicitors at the call center are only transferred calls where a consumer has answered and thus avoid wasted time dialing telephone numbers and waiting to see if a called telephone number is answered.

63. The robotic recorded message telephone platforms will prompt a called party to press '1' if they are interested in learning more about the Camp Lejeune water contamination settlement matter.

64. Upon a called party pressing '1', the called party is then transferred to a live telephone solicitor known in telemarketing parlance as a "lead generator" or "roper".

65 The lead generator or "roper" will engage in deceptive and illegal

techniques to solicit consumers, including, *inter alia*: manipulating the caller identification such that the caller cannot be easily identified or called back; identifying with a false or generic-sounding business name; deliberately calling telephone numbers which appear on the National Do Not Call Registry; refusing to provide identifying information to the called party upon inquiry; uttering profanities to or otherwise threatening or harassing the called party if the consumer does not cooperate by expressing interest or providing requested personal information or the called party requests not to be called.

66. Where a called party fails to meet the pre-qualification criteria, the lead generator will suddenly hang up and move on to the next person called by the automatic telephone dialing system.

67 When a lead generator or "roper" has a consumer who meets the qualification criteria – referred to in telemarketing slang as the "mark" – the lead generator will then live transfer the call to a "verifier."

68. The verifier then continues the qualification process with the called party, reviewing the pre-qualification criteria, and where the called party meets the qualification criteria, will then attempt to solicit up the called party to retain the services of Defendants to file an administrative claim or take all necessary actions for the purposes of prosecuting a claim against the federal Government under the Camp

Lejeune Justice Act on behalf of the called party.

69.   Once a called party expresses interest in retaining the services of Defendants, the "verifier" will then forward to the called party via electronic mail a representation agreement granting Defendants the necessary authority to file a claim and take actions for and on behalf of the called party.

70.   In general, lawyers are prohibited from soliciting clients in person, on the phone, and through real-time electronic communication, unless the person they're talking to is: a lawyer; a family member, close friend, or prior business associate; or someone who routinely uses similar legal services for their business.  ABA Model R. Prof. Conduct 7.3.

71.   Defendants are well aware of the illegal and unethical tactics its called centers are engaged in, but are deliberately indifferent to what is occurring by engaging in willful blindness and representing that they are "unaware" of the illegal and unethical telemarketing conduct, and to be able to claim that if anyone is guilty of any violation it is the anonymous third-party call center.

72.   Defendants are well aware that the automatic telephone dialing systems and the telemarketing activities which it directs its agents to utilize are illegal and violate the TCPA.

73.   Defendants are well aware of the illegal telemarketing activities, as one or

more of the Partners have been haled into several federal district courts stemming from its violations of the TCPA.

74. Plaintiff has received dozens of telephone calls which commence with a pre-recorded message regarding filing claims related to the Camp Lejeune settlement.

75. In order to better identify the person or persons behind the unsolicited and unwelcome pre-recorded message robocalls, Plaintiff will engage with the telemarketer and attempt to feign interest.

76. On most of the occasions where Plaintiff has engaged the telemarketer and attempted to feign interest, during the pre-qualification process the Plaintiff usually will be suddenly hung up upon without Plaintiff identifying the calling party.

77. Any overt attempt by Plaintiff to ask identifying information of the calling party is usually met with an immediate hang up.

78. On a limited number of occasions, Plaintiff was able to work the call further along and, ultimately, was able to better identify the persons behind the calls.

<u>Call Number 1</u>

79. On January 6, 2023, at approximately 3:14 P.M., Defendants or Defendants' agent initiated a call to Plaintiff residential telephone line 734-***-**24.

80. The caller identification number displayed was 734-424-4781, and the caller identification name displayed was SPAM RISK.

81. Upon answering the call by saying "hello", Plaintiff heard a "boink" sound and then a delay or approximately 4 seconds before a pre-recorded voice message was heard saying:

> "Hello, this is David. And I am calling you on a recorded line on behalf of Camp Lejeune Water Contamination Settlement for U.S. Marines. So you or any of your family members were in U.S. Marines? [Delay.] Great! This qualifies you for cash settlement. Please hold the line."

82. Plaintiff was then transferred to a live telemarketer who identified himself as Ron and began to ask pre-qualifying questions.

83. When Plaintiff began asking Ron for better identifying information, Ron stated that he would place Plaintiff's telephone number on the "do not call" list so there would be no further calls and then suddenly hung up.

84. Immediately after the termination of the call, Plaintiff dialed the caller identification number displayed (734-424-4781) to make a do not call demand which telephone call was answered with a recorded message stating "the person at extension number 3213 is not available."

Call Number 2

85. On January 11, 2023, at approximately 12:00 P.M., or Defendants or Defendants' agent, initiated a call to Plaintiff's residential telephone line 407-***-**22.

26

86. The caller identification number displayed was 407-201-2446, and the caller identification name displayed was UNKNOWN NAME.

87. Upon answering the incoming call by saying "hello", Plaintiff heard a "boink" sound and then silence for approximately 6 seconds, then a live person came on the line and identified himself as "Derrick from Camp Lejeune Water Contamination Settlement for U.S. Marines."

88. Derrick asked some pre-qualification questions.

89. Suddenly, the call terminated.

90. Upon the termination of the telephone call, Plaintiff dialed the caller identification number displayed (407-201-2446) to make a do not call demand; the dialed telephone number merely rang and was not answered.

<u>Call Number 3</u>

91. On January 11, 2023, at approximately 12:02 P.M. – just a few minutes after Plaintiff had hung up from Call Number 1, *supra*, Defendant or Defendant's agent, initiated a call to Plaintiff's residential telephone line 407-***-**22.

92. The caller identification number displayed was 407-201-2496, and the caller identification name displayed was UNKNOWN NAME.

93. Upon answering the incoming call by saying "hello", Plaintiff noted a silence of approximately 4 seconds and then heard a telemarketer who identified

himself as "Dave Brown from the Camp Lejeune Settlement Group."

94. Brown asked Plaintiff some pre-qualifying questions and then suddenly hung up.

95. Upon the termination of the telephone call, Plaintiff dialed the caller identification number displayed (407-201-2496) to make a do not call demand; the dialed telephone number merely rang and was not answered.

Call Number 4

96. On February 22, 2023, at approximately 4:12 P.M., Defendant or Defendant's agent, initiated a call to Plaintiff's residential telephone line 734-***-**12.

97. The caller identification number display was 734-389-7112, and the caller identification name displayed was UNKNOWN NAME.

98. Upon answering the incoming call by saying "hello", Plaintiff noted a "boink" sound, silence of approximately 6 seconds and then heard a pre-recorded message which began "Morbid here from the Camp Lejeune Justice Act Health Line."

99. An interactive voice response system then began to ask Plaintiff pre-qualifying questions.

100. Plaintiff was then connected to a live telemarketer who identified himself as Peter Stone, who asked Plaintiff more pre-qualifying questions.

101. The call was then transferred to a live telemarketer who identified himself as Steve Shelton who then attempted to sign Plaintiff up for attorney representation.

102. Shelton sent Plaintiff an email with a contract for Plaintiff to sign for legal representation by Group in the Camp Lejeune litigation.

103. Upon the termination of the telephone call, Plaintiff dialed the caller identification number displayed (734-389-7112) to make a do not call demand; the dialed telephone number was answered by a fax machine.

Call Number 5

104.   On February 22, 2023, at approximately 5:03 P.M., Defendants or Defendants' agent initiated a telephone call to Plaintiff's residential telephone line 734-***-**12.

105. The caller identification number display was 725-715-2469, and the caller identification name displayed was UNKNOWN NAME.

106.   Upon answering the call by saying "hello", Plaintiff heard a "boink" sound, approximately 4 seconds of silence, and then a pre-recorded message that stated "Hi, my name is June and I am calling you on behalf of Camp Lejeune Water Containment Settlement for U.S. Marines." The recorded prompted to press '1' if Plaintiff or a "loved one" had served at Camp Lejeune prior to 1987.

107.   In order to better identify the caller, Plaintiff pressed '1'.

108. The call was then transferred to a live telemarketer who identified himself as Peter Stone.

109. As Stone was asking a pre-qualifying question, the call suddenly terminated.

110. Upon the termination of the telephone call, Plaintiff dialed the caller identification number displayed (725-715-2469) to make a do not call demand; the dialed telephone number was answered by a recorded message asking Plaintiff to dial '1' if Plaintiff had a blue, white and red Medicare card.

<u>Call Number 6</u>

111. On February 28, 2023, at approximately 12:00 P.M., Defendants or Defendants' agent initiated a call to Plaintiff residential telephone line 734-***-**24.

112. The caller identification number displayed was 734-424-9620, and the caller identification name displayed was WESELY KATHY.

113. Upon answering the call by saying "hello", Plaintiff heard a "boink" sound and then a delay or approximately 5 seconds before a pre-recorded voice message was heard saying:

> "Hello, this is David. And I am calling you on a recorded line on behalf of Camp Lejeune Water Contamination Settlement for U.S. Marines. So you or any of your family members were in U.S. Marines? [Delay.]"

114. Plaintiff was then transferred to a live telemarketer who identified himself

as Mark and began to ask pre-qualifying questions.

115. During the pre-qualification process, Mark asked if Plaintiff had an alternate telephone number, to which Plaintiff responded "no." Mark then stated that he would call back in a few minutes and hung up. Mark did not call back.

116. Immediately after the termination of the call, Plaintiff dialed the caller identification number displayed (734-424-9620) to make a do not call demand; the dialed telephone number rang and answered by a personal (family) voice mail system.

## COUNT I
## VIOLATION OF THE TCPA - ROBOCALL

117. Plaintiff incorporates the allegations of paragraphs 1 through 116, *supra.*

118. Each of Call Numbers 1, 4, 5, and 6 were in violation of the TCPA implementing regulations, specifically 47 C.F.R. 64.1200(a)(3), as Defendants or Defendants' agent initiated a telephone call to a residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party and there being no emergency.

119. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT II
## VIOLATION OF THE TCPA - ABANDONED CALL

120. Plaintiff incorporates the allegations of paragraphs 1 through 116, *supra.*

121.   Each of Call Numbers 1 through 6 were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7), as Defendants or Defendants' failed toto connected the call to a live sales representative within two (2) seconds of the called person's completed greeting.

122.   The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT III**
**VIOLATION OF THE TCPA - DO NOT CALL**

123.   Plaintiff incorporates the allegations of paragraphs 1 through 116, *supra*.

124.   Each of Call Numbers 1 through 6, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendant or Defendant's agent initiated a telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

125.   The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT IV**
**VIOLATION OF THE TCPA - FALSIFIED CALLER ID**

126.   Plaintiff incorporates the allegations of paragraphs 1 through 116, *supra*.

127. Each of Call Numbers 1 through 6 inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendant and/or Defendant's agents failed to provide caller identification information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours.

128. The Defendant had to take deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violations of the TCPA was wilful and/or knowing.

## COUNT V
## VIOLATION OF THE TCPA - NO POLICY

129. Plaintiff incorporates the allegations of paragraphs 1 through 116, *supra.*

130. Each of Call Numbers 1 through 6 inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(1), as Defendant and/or Defendant's agents failed to have a written policy, available upon demand, for maintaining a do-not-call list.

131. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT VI
## VIOLATION OF THE TCPA - FAILURE TO TRAIN

132. Plaintiff incorporates the allegations of paragraphs 1 through 116, *supra.*

133. Each of Call Numbers 1 through 6 inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(2), as Defendant and/or Defendant's agents failed to train their personnel engaged in telemarketing in the existence and use of the do-not-call list.

134. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT VII**
**VIOLATION OF THE TCPA - FAILURE TO IDENTIFY**

135. Plaintiff incorporates the allegations of paragraphs 1 through 116, *supra.*

136. Each of Call Numbers 1 through 6 inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(4), as Defendant and/or Defendant's agents failed to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and/or a telephone number or address at which the entity may be contacted.

137. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT VIII**
**VIOLATION OF THE MTCCCA**

138. Plaintiff incorporates the allegations of paragraphs 1 through 116, *supra.*

139. Call Numbers 1, and 4 through 6, inclusive, were each in violation of the of the MTCCCA, specifically M.C.L. § 484.125(2)(a), as Defendants or Defendants' agent used a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to deliver a recorded message for the purpose of presenting commercial advertising to the subscriber without the subscriber requested or consenting to same; and/or M.C.L. § 484.125(2)(b), as Defendant or Defendant's agent delivered or attempted to deliver intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

## COUNT IX
## VIOLATION OF THE MHSSA

140. Plaintiff incorporates the allegations of paragraphs 1 through 116, *supra.*

141. Call Numbers 1, and 4 through 6, inclusive, were each in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendant or Defendant's agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. 445.111b(1), as the person making the telephone solicitation did not state his or her name and the full name of the organization or other person on whose behalf the call was initiated; and/or M.C.L. 445.111b(3), as the telephone solicitor intentionally blocked or otherwise interfered with the caller identification function on the

35

telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber.

## COUNT X
## VIOLATION OF THE FTSL

142. Plaintiff incorporates the allegations of paragraphs 1 through 116, *supra.*

143. Each of Call Numbers 2 and 3 were in violation of the FTSL; specifically Fla. Stat. § 501.059(2), as Defendant or Defendant's agent made an unsolicited telephonic sales call to a residential telephone number and did not identify himself by his or her true first and last names and the business immediately upon making contact by telephone with the person who is the object of the telephone solicitation; and/or Fla. Stat. § 501.059(b), Defendant or Defendant's agent caused a telephonic sales call to be made to fail to transmit the originating telephone number and the name of the telephone solicitor to any caller identification service in use by a recipient of a telephonic sales call.

144. The aforesaid violations of the FTSL were wilful and/or knowing as is evidenced by the repeated number of calls.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendant, as follows:

A.   Damages:

    i.   Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| I | 6 |
| II | 6 |
| III | 6 |
| IV | 6 |
| V | 6 |
| VI | 6 |

A total of 36 violations at $500 per violation for damages of $18,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $54,000.00.

    ii.   Damages for violations of the MTCCCA alleged at Count VIII: 4 violations at $1,000 per violation, for damages of $4,000.00.

    iii.   Damages for violations of the MHSSA alleged at Count IX: 4 violations at $250 per violation, for damages of $1,000.00.

    iv.   Damages for violation of the FTSL alleged at Count X: 4 calls at $500 per call, for damages of $2,000.00, which amount shall be trebled because the violations were willful and/or

knowing, for total damages of $6,000.00.

The cumulative total amount of damages claimed in this action is $65,000.00, and in the event of default judgment is the sum certain damages amount that will be sought.

B.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C.  An injunction enjoining Defendant from initiating any telephone calls to Plaintiff's residential telephone and cellular telephone lines.

D.  Interest accruing from the date of filing until paid at the statutory rate; and,

E.  Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: March 6, 2023

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

### DEFENDANTS
KRAUSE AND KINSMAN LAW LLC; ADAM WILLIAM KRAUSE; ROBERT LOUIS KINSMAN; PATRICIA LYNN CAMPBELL; JOANNA BERNADETTE ORSCHELN

**(b)** County of Residence of First Listed Plaintiff ___ORANGE, FL___
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant ___JACKSON, MO___

*(IN U.S. PLAINTIFF CASES ONLY)*

Case:2:23-cv-10541
Judge: Friedman, Bernard A.
MJ: Stafford, Elizabeth A.
Filed: 03-08-2023 At 08:20 AM
CMP Dobronski v. Krause and Kinsman
Law LLC, et al (jo)

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & / [ ] 367 Health Care/ | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' / Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine / Injury Product | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| | [ ] 345 Marine Product / Liability | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | Liability / **PERSONAL PROPERTY** | | | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | **LABOR** | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | Product Liability / [ ] 380 Other Personal | [ ] 720 Labor/Management | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ |
| [ ] 196 Franchise | [ ] 360 Other Personal / Property Damage | Relations | [ ] 862 Black Lung (923) | Exchange |
| | Injury / [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | [ ] 362 Personal Injury - / Product Liability | [ ] 751 Family and Medical | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | Medical Malpractice | Leave Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate | | [ ] 871 IRS—Third Party | Act/Review or Appeal of |
| [ ] 240 Torts to Land | [ ] 443 Housing/ / Sentence | | 26 USC 7609 | Agency Decision |
| [ ] 245 Tort Product Liability | Accommodations / [ ] 530 General | | | [ ] 950 Constitutionality of |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - / [ ] 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment / **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 446 Amer. w/Disabilities - / [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | |
| | Other / [ ] 550 Civil Rights | Actions | | |
| | [ ] 448 Education / [ ] 555 Prison Condition | | | |
| | / [ ] 560 Civil Detainee - | | | |
| | / Conditions of | | | |
| | / Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227

Brief description of cause:
Illegal telemarketing calls

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ 65,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
March 6, 2023

SIGNATURE OF ATTORNEY OF RECORD
*mark W Dobronski*

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?    ☐ Yes
                                                                                                   ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.        Other than stated above, are there any pending or previously
        discontinued or dismissed companion cases in this or any other    ☐ Yes
        court, including state court? (Companion cases are matters in which    ☒ No
        it appears substantially similar evidence will be offered or the same
        or related parties are present and the cases arise out of the same
        transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes : _____

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED



FROM:

MARK W DOBRONSKI
PO BOX 85547
WESTLAND, MI 48185-0547

TO:

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

U.S. MARSHALS

**PRIORITY MAIL®**

US POSTAGE PAID
**$9.65**

Origin: 48130
03/04/23
2525100130-4

RDC 22

C052

EXPECTED DELIVERY DAY: 03/06/23

SHIP
TO:
231 W LAFAYETTE BLVD
FL 5TH
DETROIT MI 48226-2777

USPS TRACKING® #

9505 5123 0482 3053 0030 43

USPS.COM/PICKUP

**UNITED STATES POSTAL SERVICE**

P

- Expected delivery date s
- Domestic shipments incl
- USPS Tracking® service i
- Limited international insu
- When used internationall

*Insurance does not cover certain
Domestic Mail Manual at http://pe
** See International Mail Manual at

**FLAT RATE E**
ONE RATE ■ ANY WEIGH

**TRACKED ■ IN**

EP14F July 2022
OD: 12 1/2 x 9 1/2

PS00001000014

This package is made from post-consumer waste. Please recycle - again.